STATE of Wisconsin, Plaintiff-Respondent,

v.

Tony M. SMITH, Defendant-Appellant-Petitioner.

Supreme Court

*Nos. 94–3364–CR, 94–3365–CR, 94–3366–CR, 94–3367–CR.
Oral argument October 31, 1996.—Decided February 6, 1997.*

(Also reported in 558 N.W.2d 379.)

258

259

For the defendant-appellant-petitioner there were briefs by *John Allan Pray* and *Legal Assistance Program, University of Wisconsin Law School*, Madison and oral argument by *John Allan Pray*.

For the plaintiff-respondent the cause was argued by *William L. Gansner*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. JANINE P. GESKE, J. This is a review of a published decision of the court of appeals[1] affirming an order of the circuit court for Milwaukee County, Maxine A. White, judge, denying Smith's postconviction

---

[1] *State v. Smith*, 198 Wis. 2d 820, 543 N.W.2d 836 (Ct. App. 1995).

motion. Smith seeks resentencing on the grounds that his counsel provided ineffective assistance by failing to object at Smith's sentencing hearing when the prosecutor breached the plea agreement. We conclude that defense counsel's performance was deficient, and that Smith was prejudiced by the State's material and substantial breach of the plea agreement. We therefore reverse the decisions of the lower courts and remand for a new sentencing hearing.

## FACTS AND PROCEDURAL HISTORY

¶ 2. Prior to his conviction, defendant Smith and the Milwaukee County Assistant District Attorney negotiated a plea agreement whereby Smith agreed to plead no contest to one count of burglary and guilty to four misdemeanors.[2] Under the terms of the plea agreement, the State agreed to dismiss three additional misdemeanor charges against Smith. Those charges were to be read in at sentencing. The prosecutor also agreed to make no sentencing recommendation. Judge Leander J. Foley presided over the plea hearing. In accepting Smith's plea, the circuit court informed him that he could be sentenced to the maximum prison term for each offense. The court then ordered a pre-sentence investigation.

¶ 3. Judge John J. DiMotto presided over the sentencing hearing. At that hearing, and contrary to the plea agreement, the prosecutor recommended that Smith be sentenced to 58 months in prison. Smith's counsel did not object to the prosecutor's recommendation. Defense counsel then recommended a prison

---

' [2] Smith pled guilty or no contest to charges under the following statutes: Wis. Stat. §§ 943.10(1)(a), 943.01(1), 943.11, 3.21(1)(a) and 939.05. (1993–94). All future references are to the 1993–94 volume unless otherwise indicated.

sentence of 36 months. The circuit court sentenced Smith to six years in prison on the burglary count and nine months in jail on each misdemeanor to run concurrently with the burglary sentence. The court analyzed a number of factors appropriate for sentencing and never mentioned the State's recommendation of 58 months.[3]

¶ 4. Smith filed several motions after his sentencing. First, he filed two motions that were heard by Judge DiMotto.[4] Later, Smith filed a postconviction motion, pursuant to Wis. Stat. § 809.30, alleging ineffective assistance of counsel. He alleged that his trial counsel was ineffective for failing to object during sentencing when the plea agreement was breached. The ineffective assistance motion was filed after the court of appeals granted Smith's motion to extend time for filing a notice of appeal.

¶ 5. Judge Maxine A. White was assigned to handle the latter postconviction motion. Without a hearing, and without a response from the State, the circuit court denied Smith's motion alleging ineffective assistance. The court first concluded that defense coun-

---

[3] The sentencing court also considered the pertinent sentencing guidelines and, according to the State, the sentence Smith received was at the upper end of the sentencing guidelines for his offense.

[4] The motions after sentencing heard by Judge DiMotto included a motion to modify the sentence and a motion for credit for time served. Neither motion was explicitly raised, or granted, under Wis. Stat. § 809.30, the statute governing postconviction motions. The court granted Smith's first two motions by giving Smith credit for time served and modifying the misdemeanor sentences from nine month terms each to four month terms each. Neither of these motions is relevant to our consideration of the ineffective assistance of counsel claim here.

sel's failure to object at the sentencing constituted deficient performance. The court also found that the sentencing court did not rely on the prosecutor's sentencing recommendation. Therefore, the circuit court held that defense counsel's deficient performance did not prejudice the outcome of the sentencing. Smith appealed.

¶ 6. On appeal Smith asserted that by recommending a sentence the prosecutor had committed a material and substantial breach of the plea agreement. By doing so, Smith contended, the prosecutor denied Smith what he bargained for. Smith agreed with the circuit court's conclusion that under *Strickland v. Washington*, 466 U.S. 668 (1984),[5] the deficient performance component of the ineffective assistance of counsel test was met when his attorney failed to object to the prosecutor's breach.

¶ 7. Smith next contended that the *Strickland* decision rejected an outcome-determinative test for proving the prejudice component of an ineffective assistance claim. Smith maintained that the outcome was affected because if the State had not breached the plea agreement, or if his counsel had objected to the breach, Smith would have received the State's "no recommendation" statement for which he negotiated. Smith also contended at the court of appeals, as he does here, that prejudice can be presumed from his counsel's deficient performance in this case.

¶ 8. In response, the State conceded at the court of appeals that the prosecutor breached the plea agree-

---

[5] *Strickland v. Washington*, 466 U.S. 668 (1984), sets out the two-part test for assessing an ineffective assistance of counsel claim.

ment.[6] The State also agreed that defense counsel's deficient performance prejudiced Smith because a term of his agreement with the State was not met. The State conceded that together, the breach of the plea agreement and the failure to object to that breach rendered the proceedings flawed and unfair. According to the State, the proper focus then was not whether Judge DiMotto would have imposed a different sentence if Smith's counsel had objected, but whether the sentencing proceeding itself would have been altered. Before the court of appeals, the State agreed with Smith that he was entitled to relief in the form of resentencing.

¶ 9. The appellate court upheld the circuit court's determination of deficient performance by Smith's trial attorney. 198 Wis. 2d at 824. The court of appeals likewise upheld the lower court's conclusion that Smith was not prejudiced by his counsel's performance, for two reasons. First, the court of appeals underscored the fact that Judge Foley, in accepting Smith's plea, informed Smith that the court was not bound by the prosecutor's recommendations, and that the court could sentence Smith up to the maximum prison term for each offense. 198 Wis. 2d at 825. Smith acknowledged at the plea hearing that he understood this possibility.

¶ 10. Second, the court of appeals held that Judge DiMotto relied on the sentencing guidelines, Smith's prior record, his character, and the number of

---

[6] The State argued, however, that Smith failed to timely raise the ineffective assistance of counsel claim in his series of postconviction motions. By order of July 15, 1995, the court of appeals denied the State's motion seeking summary affirmance on the waiver grounds. *State v. Smith*, 198 Wis. 2d 820, 823 n.3, 543 N.W.2d 836 (Ct. App. 1995). The court of appeals proceeded to review the merits of the ineffective assistance claim.

crimes involved, and did not rely on the prosecutor's recommendation when deciding Smith's sentence. 198 Wis. 2d at 827. In fact, the court of appeals surmised that Judge DiMotto "apparently ignored the prosecutor's recommendation." *Id.* Because the sentencing judge did not rely on the prosecutor's recommendation, the court held that Smith did not show a reasonable probability that, in the absence of his counsel's failure to object, the "result of the proceeding would have been different," 198 Wis. 2d at 827 (citing *Strickland*, 466 U.S at 694). According to the court of appeals, Smith failed to show that if the prosecutor had not made a sentencing recommendation, or if Smith's counsel had objected to such a recommendation, there was a reasonable probability that Smith would have received a lesser sentence. *Id.*

## STANDARD OF REVIEW

¶ 11. When the facts are undisputed, the question of whether the prosecutor's conduct breached the terms of the plea agreement is a question of law that we review de novo. *State v. Wills*, 193 Wis. 2d 273, 277, 533 N.W.2d 165 (1995). The question of whether counsel's actions constitute ineffective assistance is a mixed question of law and fact. *State ex rel. Flores v. State*, 183 Wis. 2d 587, 609, 516 N.W.2d 362 (1994) (citing *Strickland*, 466 U.S. at 698). The circuit court's findings of fact will not be reversed unless they are clearly erroneous. *State v. Pitsch*, 124 Wis. 2d 628, 633–34, 369 N.W.2d 711 (1985); Wis. Stat. § 805.17(2). Finally, the ultimate conclusion of whether counsel's conduct violated Smith's right to effective assistance of counsel is a question of law that this court decides without defer-

ence to the lower courts.[7] *State v. [Oliver Ross] Johnson*, 133 Wis. 2d 207, 216, 395 N.W.2d 176 (1986); *State v. Ludwig*, 124 Wis. 2d 600, 607, 369 N.W.2d 722 (1985).

## ARGUMENTS OF THE PARTIES

¶ 12. Both parties come to us concerned with the integrity of the plea process. Smith argues that he was prejudiced because he did not receive a material and substantial benefit of the agreement he made with the State, a sentencing without any recommendation by the prosecutor. The State is likewise concerned that the integrity of the plea process be preserved, but argues here that Smith has not been prejudiced.[8]

[7] The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

Art. I, sec. 7 of the Wisconsin constitution provides:

> Rights of accused. In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

[8] The parties agreed at oral argument that here we are concerned with only one breach of the plea agreement, a breach

¶ 13. Smith contends that he was denied his right to effective assistance of counsel by his attorney's failure to object when the prosecutor recommended a sentence in violation of their plea agreement. First, he asserts that the prosecutor's recommendation was a material and substantial breach of the negotiated plea agreement. Second, Smith asserts that his counsel's failure to object to the prosecutor's recommendation constituted deficient performance. Third, Smith contends that he was prejudiced both because he did not receive what the State promised him in the plea agreement and because his defense counsel failed to object to the broken promise. Smith seeks a remand for resentencing under the terms of the original plea agreement.

¶ 14. The State agrees that the circuit court order summarily denying Smith's motion for postconviction relief should be reversed. First, the State has conceded throughout these proceedings that by recommending a sentence of 58 months, the prosecutor breached the terms of the plea agreement with Smith.[9] Second, the State has likewise conceded throughout these proceedings that the adversary process did not properly function here, and that defense counsel's failure to object at the sentencing hearings constituted deficient performance. Before the court of appeals, the State also conceded that Smith was prejudiced by his counsel's deficient performance following the breach.

---

by the prosecutor. Thus, we do not address the procedural implications of a case where both parties to the plea agreement have breached its terms.

[9] The State asserts that the breach was "inadvertent." However, as the United States Supreme Court said in a similar breach of a plea agreement case, the fact that "the breach was inadvertent does not lessen its impact." *Santobello v. New York,* 404 U.S. 257, 262 (1971).

The State initially argued that the proper focus, under *Strickland*, and under *State v. Poole*, 131 Wis. 2d 359, 389 N.W.2d 40 (Ct. App. 1986), was whether the prosecutor complied with the plea agreement. According to the State's brief to the court of appeals, the actual prejudice sustained by Smith was the State's failure to perform one of the terms to which Smith agreed. A breach of the plea agreement rendered the sentencing proceeding fundamentally unfair. Had the prosecution's breach been objected to at the sentencing, the proceeding would have been different. The breach, according to the State, would have been noted and corrected.

¶ 15. The State now withdraws its earlier concession of prejudice. The State asserts that its argument before the court of appeals was "doctrinally incorrect" under *Strickland*. Below, the State focused on whether the sentencing proceeding itself would have been different if defense counsel had objected to the prosecutor's recommendation. The State argued that the proceeding would have been different, presumably because either the prosecutor would have withdrawn the recommendation, or because Judge DiMotto would have granted a new sentencing hearing before a different judge. Before this court, however, the State contends that the proper inquiry is whether there is a reasonable probability that, had defense counsel performed properly, the sentencing proceeding would have produced a different outcome, i.e., a different sentence.

¶ 16. The State now reads *Strickland* to require a full hearing in this case to apply the test for ineffectiveness of counsel. The State submits that both the circuit court and the court of appeals erred in summarily determining, without a fully developed record, that Smith was not prejudiced by his counsel's performance

subsequent to the breach. In particular, the State points out that the judge accepting the plea was not the sentencing judge. The latter judge, Judge DiMotto, was never made aware of the State's promise not to recommend a specific sentence. The State contends that it would have been quite reasonable for Judge DiMotto to conclude that the defense had agreed as part of the plea agreement to the State's recommendation of 58 months' imprisonment.

¶ 17. In addition, the State points out that the sentencing court may well have relied on the prosecutor's recommendation, but failed to mention it. The State offers certain statistical information to assert that because the overwhelming majority of criminal cases are terminated by guilty or no-contest pleas, and because sentence recommendations by prosecutors are often a part of the negotiated disposition, such sentencing concessions by the State are "important, significant, and influential in the courts' ultimate sentencing decisions."[10] Respondent's brief at 20–21. Under such circumstances, the State contends that the circuit court should not have summarily rejected

[10] As the United States Supreme Court said in *Santobello v. New York*, 404 U.S. 257, 260 (1971), "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the [state] would need to multiply by many times the number of judges and court facilities." For a survey of Wisconsin case law on the purpose and validity of plea agreements, and the consequences of a breach of a plea agreement, *see* Christine M. Wiseman et al., *Criminal Practice and Procedure* §§ 23.11-23.42 at 740–758 (West Wisconsin Practice Series, Vol. 9, 1996).

Smith's ineffectiveness claim. Rather, the State urges us to remand for a plenary examination of Smith's ineffectiveness claim. By giving both parties the opportunity to present evidence and offer argument, the State asserts that the circuit court can specifically determine whether there is a reasonable probability that proper performance by Smith's counsel, after the prosecutor's breach, would have produced a different result.

## BREACH OF THE PLEA AGREEMENT

■■■

¶ 18. A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement. *State v. Wills*, 187 Wis. 2d 529, 536, 523 N.W.2d 569 (Ct. App. 1994) *aff'd*, 193 Wis. 2d 273, 533 N.W.2d 165 (1995) (citing *Mabry v. Johnson*, 467 U.S. 504 (1984)). Due process concerns arise in the process of enforcing a plea agreement. *Wills*, 187 Wis. 2d at 537 (citing Daniel Frome Kaplan, Comment, *Where Promises End: Prosecutorial Adherence to Sentence Recommendation Commitments in Plea Bargains*, 52 U. Chi. L. Rev. 751, 755 (1985)). "Although a defendant has no right to call upon the prosecution to perform while the agreement is wholly executory, once the defendant has given up his bargaining chip by pleading guilty, due process requires that the defendant's expectations be fulfilled." 187 Wis. 2d at 537 (quoting Kaplan, 52 U. Chi. L. Rev. at 755).

■■

¶ 19. The *Wills* court concluded that a contract law analysis of a plea agreement leads to the same result as a due process analysis. 187 Wis. 2d at 537. An agreement by the State to make a particular sentence recommendation may induce the defendant to waive

his fundamental right to a trial. "Government sentence recommendation commitments fundamentally influence the defendant's calculus by altering the expected outcome of a sentencing proceeding." *Id.* (quoting Kaplan, 52 U. Chi. L. Rev. at 769). When a prosecutor does not make the negotiated sentencing recommendation, that conduct constitutes a breach of the plea agreement. *State v. Poole*, 131 Wis. 2d at 364.

¶ 20. In a case where the defendant sought to withdraw his guilty plea because the prosecutor may have technically breached the agreement, we said that a plea agreement may be vacated where a "material and substantial breach of the agreement" is proven. *State v. Bangert*, 131 Wis. 2d 246, 289, 389 N.W.2d 12 (1986). Such a breach must deprive the defendant of a material and substantial benefit for which he or she bargained. *Id.* at 290. Further, we said that a material and substantial breach amounts to a "manifest injustice." *Id.* at 289.

¶ 21. Here, the terms of the plea agreement were clear. Following their negotiations, Smith agreed to plead no contest to one charge of burglary and guilty to four misdemeanors. The State agreed to dismiss, although read in, three other misdemeanor charges and to refrain from recommending any specific sentence term. The State's agreement to make no sentencing recommendation was unambiguous, and was a material and substantial term of the plea agreement. At the sentencing hearing, however, the prosecutor recommended a sentence of 58 months, a sentence at the high end of the sentencing guidelines for the burglary offense. This recommendation was contrary to the State's agreement and was more than a technical breach of the agreement. Smith's expectation

that the prosecution refrain from making any sentencing recommendation was not fulfilled. Thus, the State's recommendation deprived Smith of the benefit for which he negotiated, and constituted a material and substantial breach of the plea agreement. Further, the breach was not remedied, because Smith's counsel failed to object to the breach.

## INEFFECTIVE ASSISTANCE: DEFICIENT PERFORMANCE

¶ 22. The failure of Smith's counsel to timely object to the prosecutor's breach is the basis for the ineffective assistance claim here. The right to effective assistance of counsel derives from the Sixth Amendment to the United States Constitution and Art. I, sec. 7 of the Wisconsin constitution. Both provisions grant the right to a fair trial, including the assistance of counsel in criminal cases. *Strickland*, 466 U.S at 684–86. There are two components to a claim of ineffective assistance of counsel: a demonstration that counsel's performance was deficient, and a demonstration that such deficient performance prejudiced the defendant. *Id.* at 687. The defendant has the burden of proof on both components. *Id.* at 688.

¶ 23. To prove deficient performance, the defendant must establish that his or her counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *State v. [Edward] Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990) (citing *Strickland*, 466 U.S. at 687). The defendant must overcome a strong presumption that his or her counsel acted reasonably within professional norms. *Id.* The *Strickland* Court

outlined certain basic duties that an attorney owes the criminal defense client. Among those is the duty to "bring to bear such skill and knowledge as will render the trial [or proceeding] a reliable adversarial testing process." 466 U.S. at 688 (citations omitted).

¶ 24. Normally, judicial scrutiny of an attorney's performance will be highly deferential. *See Strickland*, 466 U.S. at 689. The court must determine whether, under all the circumstances, counsel's conduct was outside the wide range of professionally competent assistance. *Id.* at 690. In *Strickland*, the ineffectiveness claim was based on a failure to investigate. The inquiry then involved information supplied to counsel by the defendant client. The Court noted that counsel's actions are often based on "informed strategic choices made by the defendant." *Id.* at 691.

¶ 25. Here, however, Smith's claim is based on a failure to object to adversary counsel's breach of a negotiated agreement. No further information or investigation was required to enable defense counsel to offer an objection at the sentencing hearing. Moreover, the failure to object flew in the face of the "informed strategic choice" made by Smith earlier when he entered into the plea agreement. The failure to object constituted a breakdown in the adversarial system.

¶ 26. The State concedes that defense counsel's failure to object to the prosecutor's sentencing recommendation was deficient performance. The trial court so held. The court of appeals agreed with that conclusion. The court of appeals held defense counsel's failure to immediately object to the prosecutor's clear and absolute breach of the plea agreement to be deficient performance. We therefore conclude that defense coun-

sel's failure to immediately object to the prosecutor's sentence recommendation, a recommendation that clearly breached Smith's plea agreement, was not reasonable conduct within professional norms and constitutes deficient performance.[11]

## INEFFECTIVE ASSISTANCE: PREJUDICE TO DEFENDANT

¶ 27. Whether or not Smith was prejudiced by his counsel's deficient performance is the crux of the matter now before us. The United States Supreme Court has ruled that "when a plea rests in any significant degree on a promise or agreement of the prosecutor. . .such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). The guilty plea process must be attended by certain assurances that the defendant will receive what is reasonably due, under the circumstances. *Id.* According to the *Strickland* Court, proof of prejudice requires a showing that the defendant was deprived of a fair proceeding whose result is reliable. 466 U.S. at 687. The defendant need only demonstrate to the court that the outcome is suspect, but need not establish that the final result of the proceeding would have been different. As the *Strickland* Court said,

---

[11] In light of the State's concession of deficient performance as well as our own conclusion on deficient performance, no *Machner* hearing is necessary given the facts of this case. However, *see State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979). In *Machner*, the court ruled that in order to determine on appeal whether the attorney's action was the result of deliberate trial strategy or incompetence, trial counsel's testimony as to his or her reasoning must be preserved at a hearing.

> An ineffective assistance claim asserts the absence of one of the crucial assurances that the result of the proceeding is reliable, so finality concerns are somewhat weaker and the appropriate standard of prejudice should be somewhat lower. The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. . .The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.

¶ 28. The *Strickland* test is not an outcome-determinative test. *Id.* at 693–94. In decisions following *Strickland*, the Supreme Court has reaffirmed that the touchstone of the prejudice component is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In *Nix v. Whiteside*, 475 U.S. 157, 175–76 (1986), the Court said that the "benchmark" of the right to counsel is the "fairness of the adversary proceeding;" *see also, United States v. Morrison*, 449 U.S. 361, 364 (1981) (the right to counsel "is meant to assure fairness in the adversary criminal process").

¶ 29. The *Santobello* decision was rendered prior to *Strickland* but likewise relied on principles of fairness to establish that the breach of a prosecutor's agreement required a remand either for specific performance under the agreement, or to permit the defendant to withdraw his plea. 404 U.S. at 262–63. In that case, the defendant had negotiated with the prosecutor and agreed to plead guilty to a lesser included

offense that carried a maximum sentence of one year in prison. As part of that agreement, the prosecutor agreed to make no sentence recommendation. 404 U.S. at 258. There were a number of procedural delays after the defendant entered his guilty plea and before his sentencing. In that interval, the defendant acquired new defense counsel, the original presiding judge retired, and by the time of the sentencing, a different prosecutor had taken on the case. *Id.* at 258–59. That prosecutor recommended the maximum sentence. *Id.* at 259. Unlike the facts before us, however, Santobello's counsel immediately objected to the prosecutor's breach of the plea agreement condition and requested an adjournment. *Id.*

¶ 30. The trial court declined to adjourn the hearing or to take testimony. The judge then told the parties that he was not at all influenced by the prosecutor's recommendation, but instead relied upon the presentence report in rendering the maximum sentence. *Id.* at 259–60. After unsuccessful appeals to New York courts, Santobello sought certiorari in the United States Supreme Court.

¶ 31. The Court observed that plea negotiations between the State and the defendant offer a number of advantages to efficiently ensure the public's protection and the prompt disposition of criminal cases. *Id.* at 261. But, the Court cautioned, all of those advantages are premised on a plea negotiation rooted in fairness. "[A]ll of these considerations presuppose fairness in securing agreement between an accused and a prosecutor." *Id.* To ensure a fair result to the process, certain safeguards must be present. "[A] constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such

277

promise must be fulfilled." *Id.* at 262. The Court held that the interests of justice and a recognition of the duties of the prosecution would best be served by a remand to the state courts. *Id.* at 262–63.

¶ 32. Discussing the prejudice component sometime after *Santobello*, the Supreme Court said that "[u]nreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U.S. at 372. *Santobello* remains consistent with the later rulings of the Supreme Court in that it recognizes the defendant's substantive right to fulfillment of the fundamental terms of a plea agreement, and also by its conclusion that a breach of the plea agreement, unobjected to by defense counsel, constitutes a deprivation of that substantive right.

¶ 33. In certain instances, prejudice is presumed once deficient performance has been proven. The Supreme Court highlighted several of these situations:

> In certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice. So are various kinds of state interference with counsel's assistance. Prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

*Strickland*, 466 U.S. at 692 (citations omitted).

¶ 34. Instances where the Supreme Court has presumed prejudice include *United States v. Cronic*,

466 U.S. 648, 659 (1984)(presuming that trial is unfair if the accused is denied counsel at a critical stage of the trial); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961)(presumption of prejudice when defendant is denied counsel at arraignment); *White v. Maryland*, 373 U.S. 59, 60 (1963) (prejudice presumed when defendant denied counsel at preliminary hearing); *Herring v. New York*, 422 U.S. 853, 864 (1975)(presumption of prejudice where defendant denied right to give closing argument); *Penson v. Ohio*, 488 U.S. 75, 88 (1988) (ruling that where there is a complete denial of appeal, prejudice is presumed); *Cuyler v. Sullivan*, 446 U.S. 335, 349–50 (1980) (presumption of prejudice to defendant where his attorney labored under an actual conflict of interest that negatively affected his performance).

¶ 35. Our court too, has presumed prejudice to a criminal defendant in some instances. In one ineffective assistance of counsel case we ruled that had certain letters creating doubt as to the defendant's competency to stand trial been introduced, "the trial court would have been required to hold a competency hearing." *State v. [Oliver Ross] Johnson*, 133 Wis. 2d at 224. Thus, the defendant in *Johnson* established that his counsel's failure to bring those letters to the circuit court's attention "was so serious as to deprive [the defendant] of a fair trial, a trial whose result is reliable." 133 Wis. 2d at 224. Later, in *State v. Behnke*, 155 Wis. 2d 796, 456 N.W.2d 610 (1990), we declined to consider whether the outcome would have been different but for counsel's error. In particular, we declined to assess whether the jury poll would have yielded a different result had Behnke's attorney been present at the reading of the verdict. Instead, we assumed prejudice

because the defense counsel's absence cost the defendant a "very important right." 155 Wis. 2d at 802, 806.

¶ 36. Part of the rationale behind presuming prejudice is the difficulty in measuring the harm caused by the error or the ineffective assistance. *See Strickland*, 466 U.S. at 692; *Behnke*, 155 Wis. 2d at 806. In *Behnke*, for instance, we declined to indulge in calculation or speculation about the prejudice arising from the absence of counsel and the failure to poll the jury. 155 Wis. 2d at 807.

¶ 37. In this case, both parties recognize the difficulty in measuring the degree to which Smith was prejudiced when his counsel failed to object to the prosecutor's breach. To ascertain what would have happened in the absence of error, the State suggests that we remand to the circuit court for a new hearing to determine whether Mr. Smith would have received a different sentence if the prosecutor had made no recommendation. But such a hearing would necessarily involve speculation and calculation. Retrospective testimony by the judge who sentenced Smith would be inappropriate, and irrelevant.[12] *Poole*, 131 Wis. 2d at 364.

---

[12] Similarly, the *Santobello* Court declined to reach the question of whether the sentencing judge would have been influenced had he known all the details of the plea negotiations. *Santobello v. New York*, 404 U.S. 257, 262 (1971). And although the trial judge testified at the subsequent habeas corpus evidentiary hearing in *Strickland*, on review the Supreme Court declared that the actual process of decision, if not already part of the record of the proceeding under review, should not be considered in the prejudice determination, and in fact was irrelevant to the prejudice inquiry. *Strickland v. Washington*, 466 U.S. 668, 695, 700 (1984). *See also State v. Poole*, 131 Wis. 2d 359, 364, 389 N.W.2d 40 (Ct. App. 1986).

¶ 38. Instead, we conclude that when a prosecutor agrees to make no sentence recommendation but instead recommends a significant prison term, such conduct is a material and substantial breach of the plea agreement. Such a breach of the State's agreement on sentencing is a "manifest injustice" and always results in prejudice to the defendant.[13] *See State v. Bangert,* 131 Wis. 2d at 289. The breach of a material and substantial term of a plea agreement by the prosecutor deprives the defendant of a sentencing proceeding whose result is fair and reliable. Our conclusion precludes any need to consider what the sentencing judge would have done if the defense counsel had objected to the breach by the district attorney. Rather, our conclusion is premised on the rule of *Santobello,* that when a negotiated plea rests in any significant degree on a promise or agreement of the prosecutor, such promise must be fulfilled. 404 U.S. at 262.

¶ 39. We are mindful that the sentencing court is not bound by the parties' negotiations. *State v. McQuay,* 154 Wis. 2d 116, 128, 452 N.W.2d 377 (1990); *Melby v. State,* 70 Wis. 2d 368, 385–86, 234 N.W.2d 634 (1975). The sentencing court always has an independent duty to look beyond the recommendations and to consider all relevant sentencing factors.[14] There is no

---

[13] There may be some circumstances in which the State argues that defense counsel's failure to object to a recommendation that causes a material and substantial breach of the plea agreement was a strategic decision by the defense counsel. In such cases, postconviction counsel would have to meet his or her burden at a *Machner* hearing.

[14] Sentencing is left to the discretion of the circuit court. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633 (1984).

question that Judge DiMotto had the authority to sentence Smith to any appropriate sentence up to the statutory maximum. But the prejudice in this case arose when the prosecutor recommended a significant prison term after an agreement to make no recommendation, and Smith's defense counsel failed to object to that recommendation.

¶ 40. We conclude that Smith was automatically prejudiced when the prosecutor materially and substantially breached the plea agreement. Thus, there is no need to remand for a determination of the ineffectiveness of counsel. Instead, we grant Smith's request for a new sentencing hearing conducted in accordance with the terms of the plea agreement.

*By the Court.*—Reversed and remanded for a new sentencing hearing.

The primary factors that the circuit court must consider in imposing a sentence are: (1) the gravity of the offense, (2) the character and rehabilitation needs of the defendant, and (3) the need for protection of the public. *State v. Sarabia*, 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). The sentencing court may consider other factors including the aggravated nature of the crime, the past record of criminal offenses, any history of undesirable behavior patterns, defendant's personality, character and social traits, results of presentence investigation, degree of defendant's culpability, defendant's demeanor at trial, defendant's age, educational background and work history, defendant's remorse, repentance and cooperation, and the length of pretrial detention. *State v. Borrell*, 167 Wis. 2d 749, 773–74, 482 N.W.2d 883 (1992).