# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP21-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent-Petitioner, |
| | v. |
| | Robert K. Nietzold, Sr., |
| | Defendant-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 400 Wis. 2d 545, 970 N.W.2d 590
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | March 28, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 10, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Vernon |
| JUDGE: | Darcy Jo Rood |

JUSTICES:

HAGEDORN, J., delivered the majority opinion for a unanimous Court.

NOT PARTICIPATING:

ATTORNEYS:

For the plaintiff-respondent-petitioner, there were briefs filed by *Jacob J. Wittwer*, assistant attorney general, with whom on the briefs was *Joshua L. Kaul*, attorney general. There was an oral argument by *Jacob J. Wittwer*, assistant attorney general.

For the defendant-appellant, there was a brief filed by *Philip J. Brehm* and *Philip J. Brehm Attorney at Law*, Janesville. There was an oral argument by *Philip J. Brehm*.

An amicus curiae brief was filed by *Ellen Henak, Robert R. Henak* and *Henak Law Office, S.C.,* Milwaukee, for the Wisconsin Association of Criminal Defense Lawyers.

**2023 WI 22**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2021AP21-CR
(L.C. No. 2018CF81)

STATE OF WISCONSIN       :       IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent-Petitioner,**

    **v.**

**Robert K. Nietzold, Sr.,**

    **Defendant-Appellant.**

**FILED**

**MAR 28, 2023**

Sheila T. Reiff
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion for a unanimous Court.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 BRIAN HAGEDORN, J. Plea agreements are a kind of contract. And just like contracts, they can be breached, and breaches sometimes cured. The central question in this case is whether a prosecutor cured the breach of a plea agreement when he initially recommended a specific term of imprisonment despite the State's agreement not to do so, but then retracted and corrected the mistake upon being made aware of the error. We conclude that the breach was cured, and that defense counsel was not deficient for failing to object earlier to the errant remarks.

## I. BACKGROUND

¶2 In 2019, Robert Nietzold, Sr. pleaded no contest to one count of repeated sexual abuse of a child. He did so pursuant to a plea agreement in which the prosecutor was free to argue for prison, but agreed not to recommend a specific term of imprisonment.

¶3 At the sentencing hearing, the prosecutor asked the circuit court[1] to impose a 27-year sentence, composed of 12 years of initial confinement as recommended by the presentence investigation report (PSI), and 15 years of extended supervision——five years longer than the PSI recommendation.[2]

_____

[1] The Honorable Darcy J. Rood of the Vernon County Circuit Court presided.

[2] The prosecutor argued as follows:

So what is -- again, what's the magic number? And as I've said before, that's a difficult position that this Court is in. And a lot of times the PSI may be the best barometer because they do have their grids and their guidelines, and they understand throughout either this region, or at least the state, what -- I don't want to say typical, because there isn't a typical sentence, but at least -- you have to put a number on it eventually. And the number that they came up with was 22, 12 of initial confinement and ten of extended supervision.

Judge, I -- you know, again, whether that's the right number, not the right number, [the victim] was talking about the maximum term, which would be 40 years, 25 in and 15 out. Again, I don't know what the number is. I don't know what the magic number is. I think the number that the PSI put on is a reasonable number. I've looked at other sentences to -- again, when I say similar, at least the charge-wise, that that certainly is in the range in this area.

¶4 After the prosecutor concluded, with the specific recommendation coming at the very end of his remarks, defense counsel began by pointing out the prosecutor's breach. Counsel expressed that the State had agreed not to "make any recommendation with respect to any period of time." The prosecutor immediately acknowledged his mistake:

> [Prosecutor]: And, Judge, now that -- I wish [defense counsel] would have mentioned that. And that's an accurate statement, Judge. So --
>
> The Court: So you'll make no recommendation separate from that of the PSI.
>
> [Prosecutor]: Well, not even that. Just a prison sentence.
>
> The Court: Okay. All right.

After the prosecutor corrected the State's recommendation in conformance with the plea agreement, defense counsel wrapped up

---

Judge, the only thing I would ask the Court to consider would be 15 years is the maximum time of extended supervision. Maybe keep Mr. Nietzold on extended supervision for a 15-year period rather than the ten that's being requested.

So I guess that's what I would ask that the Court consider, is a 27-year sentence with 12 years of initial confinement and 15 years of extended supervision. That would be a -- depending upon potentially early discharge from prison at some point, that would be about 25 years out that he would be under some formal either incarceration or supervision, which I think just makes some sense in regards to the heinous nature of these crimes. And so that's what I would ask the Court to consider in regards to the sentence.

his argument and asked for two to three years of initial confinement.  Nietzold then briefly addressed the court.

¶5  Following a recess, the circuit court proceeded with its sentencing decision.  Halfway through, the court mentioned that the "state" recommended 12 years of initial confinement, leading to an extended colloquy with the prosecutor:

> The Court:  It's always so hard to put a number on what the sentence should be.  The state recommended 12 years.  We say 12 years in --
>
> [Prosecutor]:  Judge, recall that I didn't make a recommendation.
>
> The Court:  The state.  I meant DOC by the state, not you.
>
> [Prosecutor]:  Oh, I'm sorry.
>
> The Court:  I'm sorry.  I'm thinking of the DOC as the state, not [the prosecutor].
>
> [Prosecutor]:  Department of Corrections.
>
> The Court:  Department of Corrections.  Thank you for clarifying that.  I would not want the record to state that, because I did not listen to what you were saying, essentially were echoing what the PSI said.
>
> [Defense counsel]:  Well, the record does --
>
> The Court:  Other than asking for a longer extended supervision, but you didn't ask for any more --
>
> [Prosecutor]:  Right, but, Judge, --
>
> The Court:  -- confinement --
>
> [Prosecutor]:  The negotiation --
>
> The Court:  I understand.
>
> [Prosecutor]:  I was not to make any recommendation.

4

> The Court:  And you withdrew your recommendation.
>
> [Prosecutor]:  Yeah.
>
> The Court:  I get that.  I'm just saying it was DOC. It was DOC that made this recommendation.

Thus, the court clarified that it was referring to the Department of Corrections' recommendation when invoking the "state," and that the court understood the prosecutor had withdrawn his earlier comments and was not arguing for a specific prison term.  In the end, the circuit court crafted its own sentence of 25 years consisting of 15 years of initial confinement and ten years of extended supervision.

¶6   Nietzold filed a motion for postconviction relief seeking resentencing based on the State's initial violation of the plea agreement.  The circuit court denied the motion without a hearing.  Nietzold appealed and the court of appeals reversed and remanded for resentencing before a new judge.  State v. Nietzold, No. 2021AP21-CR, unpublished slip op., ¶18 (Wis. Ct. App. Dec. 9, 2021).  The court of appeals reasoned that the prosecutor materially breached the plea agreement by commenting on the merits of the PSI's recommendation and by recommending a specific sentence.  Id., ¶14.  It found unpersuasive the State's arguments that the prosecutor withdrew his earlier comments and clarified the State's position.  Id., ¶15.  We granted the State's petition for review.

## II.  ANALYSIS

¶7   Nietzold makes two arguments on appeal.  First, he contends the State materially and substantially breached the plea agreement and that this breach was not cured.  Second, he asserts that his counsel was ineffective for failing to object earlier to the prosecutor's breach.  Neither argument prevails.

### A.  Curing The Prosecutor's Breach

¶8   A plea agreement is a species of contract——albeit one with constitutional boundary markers.[3]  State v. Smith, 207 Wis. 2d 258, 271, 558 N.W.2d 379 (1997); United States v. Diaz-Jimenez, 622 F.3d 692, 694 (7th Cir. 2010).  A plea agreement is breached when a prosecutor fails to abide by the negotiated sentencing recommendation.  Smith, 207 Wis. 2d at 272.  As in contract law, mere technical breaches are generally not enough to afford a remedy.  Id.; State v. Bangert, 131 Wis. 2d 246, 289, 389 N.W.2d 12 (1986).  A defendant seeking to vacate a plea must establish by clear and convincing evidence that the breach was material and substantial.  Bangert, 131 Wis. 2d at 289.

¶9   An initial breach, however, even if material and substantial, does not end the matter.  Some breaches may be cured.  In Puckett v. United States, the United States Supreme

---

[3] Those accused of crimes have "a constitutional right to the enforcement of a negotiated plea agreement."  State v. Williams, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733.  Given the constitutional rights defendants give up when entering a plea, "the accused's due process rights demand fulfillment of the bargain."  Id.

Court rejected the notion that an initial error——for example, "requesting a higher sentence than agreed upon"——is uncurable. 556 U.S. 129, 139-40 (2009). While some breaches cannot be cured, at least "some breaches may be curable upon timely objection——for example, where the prosecution simply forgot its commitment and is willing to adhere to the agreement." Id. at 140.

¶10 This court has similarly said that some breaches can be cured. In Smith, we held that the State breached the plea agreement when it recommended a term of imprisonment despite its agreement to make no specific recommendation. 207 Wis. 2d at 272-73. After explaining that this was a substantial and material breach, we added that the breach "was not remedied, because Smith's counsel failed to object to the breach." Id. In other words, had the prosecutor been alerted to the error and corrected it, the initial breach may have been cured.

¶11 General principles of contract law confirm the proposition that some material and substantial breaches are curable. In an ordinary contract, we have said that "to cure a material breach means to engage in subsequent conduct that substantially performs or performs without a material failure." Volvo Trucks N. Am. v. DOT, 2010 WI 15, ¶45, 323 Wis. 2d 294, 779 N.W.2d 423 (quoting another source). If the breach is cured, it becomes nonmaterial. Id., ¶44 (quoting another source). In the context of pleas, courts have generally held that a material breach of a plea agreement may be cured if the prosecutor unequivocally retracts the error. United States v.

7

Ligon, 937 F.3d 714, 720 (6th Cir. 2019); Diaz-Jimenez, 622 F.3d at 696; see, e.g., United States v. Amico, 416 F.3d 163, 165 (2d Cir. 2005) (concluding that government cured its plea breach by rapidly retracting it).

¶12 In this case, the parties agree that only material and substantial plea breaches require a remedy, and that some breaches can be cured. The parties further agree that the prosecutor materially and substantially breached the plea agreement by suggesting the PSI's recommendation was reasonable and recommending a specific prison term. The dispositive question is whether the breach was cured.

¶13 The terms of a plea agreement and the facts of the underlying conduct by the State in performance on that agreement are questions of fact. State v. Williams, 2002 WI 1, ¶5, 249 Wis. 2d 492, 637 N.W.2d 733. We accept a circuit court's findings of fact unless they are clearly erroneous. Id. Whether a plea agreement has been breached, however, is a question of law we review independently. Id. In Williams, we held that not only is the existence of breach a question of law, so is whether a breach is material and substantial. Id. This is because an appellate court must independently determine whether a legal standard is met by the facts in a case. Id. The same logic applies here. While the facts giving rise to an attempted cure may be found by the circuit court, whether those facts cure the breach——meaning there is no longer a material breach entitling an accused to a remedy——must likewise be a question of law. In other words, because materiality is a

8

question of law, so too is cure. See, e.g., United States v. Purser, 747 F.3d 284, 294 (5th Cir. 2014) (reviewing cure of a plea breach de novo).

¶14 On this record, we conclude the prosecutor cured the breach. To recap, the prosecutor materially and substantially breached the agreement by advocating for a specific term of imprisonment. Moments after those offending comments, defense counsel informed the court of the prosecutor's error. The prosecutor immediately acknowledged the blunder and modified the State's recommendation to an undefined prison term——exactly what Nietzold agreed to. But that's not all. The prosecutor doubled down when the circuit court made comments that initially suggested it may have forgotten or misunderstood the prosecutor's earlier correction. When the court said that the "state" recommended 12 years, the prosecutor interjected and reminded the court that he was not arguing for a specific sentence length. The court confirmed it understood, and explained that by "state" the court was referring to DOC's recommendation in the PSI. We accept this as a finding of the circuit court that the prosecutor did withdraw his earlier, erroneous comments, and was recommending only an undefined prison term. And we conclude the prosecutor's immediate and unequivocal retraction of his error——and subsequent actions affirming that retraction——constitute a sufficient cure, transforming the material and substantial breach into a nonmaterial breach. After an initial error, Nietzold received

9

what he bargained for: the State recommended a prison term but not a specific length of time.

¶15 Nietzold counters that we should look to the circuit court's comments after the prosecutor's cure as evidence that the court remained affected by the breach. However, our inquiry here focuses on the prosecutor's conduct, not the court's. See Santobello v. New York, 404 U.S. 257, 262 (1971).

¶16 Nietzold further argues that this kind of cure was "too little, too late" and cites Williams as support. 249 Wis. 2d 492, ¶52. We disagree. The prosecutor in Williams "implied that had the State known more about the defendant, it would not have entered into the plea agreement." Id., ¶47. That left the impression that she was "arguing against the negotiated terms of the plea agreement." Id., ¶48. The attempted retraction was therefore rather equivocal, coming with a "covert message to the circuit court that a more severe sentence was warranted than that which had been recommended." Id., ¶51. Unlike in Williams, the prosecutor in this case never "raised doubts regarding the wisdom of the terms of the plea agreement." Id., ¶50. Rather, he cured the breach by unequivocally retracting it.

¶17 In the end, Nietzold fails to counter the precedent establishing that even errors in an initial sentencing recommendation can be remedied. See supra ¶¶8-10. An error here occurred, but so did the necessary cure. Nietzold sufficiently received the benefit of his plea bargain.

10

## B. Ineffective Assistance of Counsel

¶18 In the alternative, Nietzold argues his counsel was ineffective for failing to contemporaneously object when the prosecutor breached the agreement. A defendant claiming ineffective assistance of counsel must show "both that (1) counsel's representation was deficient, and (2) the deficiency was prejudicial." State v. Ruffin, 2022 WI 34, ¶29, 401 Wis. 2d 619, 974 N.W.2d 432. We conclude Nietzold's counsel did not perform deficiently. See id. ("Both prongs of the inquiry need not be addressed if the defendant makes an insufficient showing on one.").

¶19 Proving deficiency requires showing that "counsel's representation fell below an objective standard of reasonableness considering all the circumstances." Id., ¶30. We are "highly deferential to counsel's strategic decisions"; "counsel's performance need not be perfect, or even very good, to be constitutionally adequate." Id.

¶20 Here, defense counsel objected after the prosecutor finished his sentencing remarks, which concluded with the erroneous recommendation for a specific sentence. Perhaps defense counsel would have done better to object earlier when the prosecutor first began considering an appropriate sentence length. But this kind of imperfection does not rise to the level of constitutionally deficient performance in this case. As we have explained, counsel did raise the issue in a sufficiently timely way, enabling the prosecutor to cure his mistake. In doing so, counsel ensured Nietzold received the

11

benefit of his plea agreement.  This comes nowhere close to a Sixth Amendment violation.  Because his counsel did not perform below a constitutionally acceptable standard, Nietzold's ineffective assistance of counsel claim fails.

### III.  CONCLUSION

¶21 The court of appeals determined that Nietzold was entitled to a new sentencing hearing.  We reverse.  Nietzold asks us to hold that the prosecutor failed to cure his breach by initially recommending a specific prison term in violation of the plea agreement.  The bell, Nietzold argues, cannot be unrung.  "But a mistake is not a bell, and usually can be corrected."  Diaz-Jimenez, 622 F.3d at 696.  Here, the prosecutor corrected his mistake by unequivocally retracting it and abiding by the terms of the plea agreement.  Nietzold's alternative argument that his counsel provided ineffective assistance for failing to timely object likewise fails.

*By the Court.*—The decision of the court of appeals is reversed.