COURT OF APPEALS
DECISION
DATED AND FILED

January 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP287-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2020CF24

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

  V.

SHANE A. BUTCHER,

   DEFENDANT-RESPONDENT.

APPEAL from orders of the circuit court for Green Lake County: MARK T. SLATE, Judge. *Reversed and cause remanded with directions.*

Before Gundrum, P.J., Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  The State appeals from orders of the circuit court granting defendant Shane A. Butcher's postconviction motion claiming ineffective assistance of trial counsel, vacating Butcher's conviction for operating a motor vehicle while intoxicated (OWI) as a fourth offense, and ordering a new trial.  We reverse and remand with directions to reinstate Butcher's conviction and sentence.

**BACKGROUND**

¶2     As relevant to this appeal, the State charged Butcher with OWI as a fourth offense after a police investigation into a freshly-damaged mailbox led police to conclude that Butcher had collided with the mailbox while driving in a snowstorm.  The Criminal Complaint alleged that a single set of tire tracks led the police from the ditch with the damaged mailbox to a residence where Butcher, Butcher's friend, Mark Lemke, and Lemke's wife, Alys Wild, were sleeping.  The car that had obviously hit the mailbox was at the residence and was registered to Wild.  Both Butcher and Lemke were visibly intoxicated when police initially made contact with them, though Lemke was so intoxicated that "he could barely even stand."  Wild denied having driven the vehicle that night and told police she had left the car with Butcher and Lemke, who had been drinking at a local bar earlier that night.  Wild denied knowing whether Butcher or Lemke had driven her car home.  "[S]he had suspicions that BUTCHER was the operator" of the car when it hit the mailbox, but was uncertain.  Neither Butcher nor Lemke ever admitted to having driven the car that hit the mailbox, or to knowing who had.

¶3     The police investigation yielded additional evidence, including the following facts and observations, all of which were presented at trial.  Both men were asleep or passed out and still fully clothed when police arrived, which, combined with the snow on the floor, suggested they went directly from the car to

2

the couch and passed out. Butcher "was definitely nervous" and evasive when questioned by police, but, unlike Lemke who was difficult to awaken and incoherent, Butcher was able to respond to police questions. Butcher appeared to be intoxicated, having "red, bloodshot, glassy" eyes and "slow, slurred speech." Butcher made multiple inconsistent statements to police regarding who drove home from the bar—first, that he was "unsure" what happened and "didn't know" who was driving; next, that he definitely was not the driver; and, finally, that he "blacked out" about how he got home despite being able to remember everything else about the evening. A boot print in the snow on the driver's side of the car was consistent with the pattern from the bottom of Butcher's boots, and dissimilar to the pattern Lemke's "clogs or slip-on style shoe" would have left. Additionally, police observed a pack of the same brand of cigarettes Lemke was smoking on the passenger side of the vehicle, while Butcher told police he does not smoke. Police did not locate a key for the car that had hit the mailbox at the residence, but Butcher had a key in his pocket when booked into jail, while Lemke had nothing. Finally, Butcher performed poorly on standardized field sobriety tests conducted by police, and his blood alcohol concentration shortly after his arrest was 0.133, above the restricted limit.

¶4     At trial, no one testified to having witnessed who was driving the car that struck the mailbox, and there was no video footage available that could show who had been driving on the night in question. Two police officers did testify that Wild had "suggested" to them during their investigation that Lemke likely would not have been driving that night because Lemke was so impaired and, therefore, Wild had "suspicioned" that Butcher was the driver. Wild did not testify at trial. Butcher's trial counsel argued to the jury that there was insufficient evidence to convict Butcher of OWI because Butcher had denied being the driver, and no one

knew for certain who had been driving when the car hit the mailbox. Despite counsel's efforts to create reasonable doubt as to whether Butcher had been the driver, the jury convicted Butcher of OWI as a fourth offense.

¶5 After sentencing, Butcher filed a postconviction motion with the circuit court alleging ineffective assistance of trial counsel. He argued that trial counsel performed deficiently in failing to object on hearsay grounds to Wild's statements, brought in through the officers, suggesting that Butcher was the driver of the vehicle. Butcher further asserted that counsel's deficient performance prejudiced him.

¶6 The circuit court held a ***Machner***[1] hearing at which trial counsel testified. The court subsequently granted Butcher's postconviction motion, vacated his OWI conviction, and ordered a new trial. In its written decision, the court found: "[t]he whole issue at trial was, can the [S]tate prove [Butcher] drove the motor vehicle?" Thus, the court concluded that trial counsel's failure to object to the hearsay testimony constituted ineffective assistance of trial counsel because it determined that the statements attributed to Wild were the only evidence presented as to who was probably driving the vehicle. The State appeals.

## DISCUSSION

¶7 A claim of ineffective assistance of counsel requires a showing that trial counsel's performance was deficient and that the deficient performance was prejudicial. ***State v. Mayo***, 2007 WI 78, ¶33, 301 Wis. 2d 642, 734 N.W.2d 115. Deficient performance is established by showing that trial counsel's representation fell below an objective standard of reasonableness. ***State v. Wesley***, 2009 WI App

---

[1] ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

118, ¶23, 321 Wis. 2d 151, 772 N.W.2d 232. Prejudice is established by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984).

¶8      "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The defendant need not prove that, in the absence of the error, he or she would have been acquitted. *State v. Smith*, 207 Wis. 2d 258, 276, 558 N.W.2d 379 (1997). Instead, the "touchstone of the prejudice component is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Id.* (citation omitted). A claim of ineffective assistance of counsel fails when the defendant has not satisfied either prong of the two-part test. *Strickland*, 466 U.S. at 697.

¶9      The issues of deficient performance and prejudice present mixed questions of fact and law. *State v. Sanchez*, 201 Wis. 2d 219, 236, 548 N.W.2d 69 (1996). Findings of historical fact will not be upset unless they are clearly erroneous, but the questions of whether counsel's performance was deficient or prejudicial are legal issues we review independently. *Id.* at 236-37.

¶10      We assume without deciding that Butcher's trial counsel performed deficiently. However, we also conclude the State has demonstrated that counsel's failure to object to the hearsay testimony did not render the jury's guilty verdict unreliable. We reach this conclusion because the evidence of Butcher's guilt—unaffected by the hearsay testimony—was overwhelming. In the context of the overwhelming evidence of guilt, we conclude that the deficiencies alleged here neither undermine our confidence in the outcome nor render the proceeding fundamentally unfair. *See Smith*, 207 Wis. 2d 258, 276. As such, Butcher has not

5

established—and cannot establish—that he was prejudiced by counsel's alleged failures.

¶11 Butcher argues that because the evidence against him at trial was "highly circumstantial," it is likely that he "would have [been] acquitted" if trial counsel had objected to the officer's hearsay testimony regarding Wild's suspicion that Butcher was the driver. We disagree.

¶12 First, the fact that the evidence against Butcher was circumstantial is of no consequence to its sufficiency. "It is well established that a finding of guilt may rest upon evidence that is entirely circumstantial and that circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990).

¶13 In addition, even if trial counsel had successfully raised the objections Butcher argues were necessary, the jury still would have heard Butcher's admission to police that he had consumed four beers at a bar with Lemke that evening before the two of them left together. It still would have heard Butcher's varied and inconsistent statements to the police—first, that he was "unsure" what happened and "didn't know" who was driving; later that he definitely was not the driver; and, finally, that he "blacked out" about how he got home. The jury would have heard how Lemke was, in the investigating officers' opinions, too intoxicated to have possibly driven home. It would have heard how Butcher was obviously impaired, with a BAC of .133. It would have heard about the fresh tracks in the snow by the driver's door matching Butcher's boots and the key found on Butcher at booking. In other words, had Butcher's counsel successfully objected and the jury never heard any testimony regarding Wild's statements, it still would have heard all of the

evidence set forth above, which, though circumstantial, is more than sufficient to support the guilty verdict.

## CONCLUSION

¶14    In sum, even absent trial counsel's assumedly-deficient performance, we are confident the jury still would have found Butcher guilty.  The admission of the evidence at issue did not render his trial unreliable or fundamentally unfair, such that trial counsel's failures to object to the hearsay statements caused him prejudice. Because Butcher has failed to establish prejudice, we conclude that the circuit court erred in granting his postconviction motion on the basis of ineffective assistance of counsel.  *See Strickland*, 466 U.S. at 697.  Therefore we reverse the orders and remand with directions to reinstate Butcher's conviction and sentence.

*By the Court.*—Orders reversed and cause remanded with directions.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5 (2021-22).