**2022 WI App 48**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:     2021AP1792-CR

Complete Title of Case:

**STATE OF WISCONSIN,**

       **PLAINTIFF-RESPONDENT,**

    **V.**

**JAMIE LEE WEIGEL,**

       **DEFENDANT-APPELLANT.**

| | |
|---|---|
| Opinion Filed: | July 28, 2022 |
| Submitted on Briefs: | May 19, 2022 |

| | |
|---|---|
| JUDGES: | Kloppenburg, Graham, and Nashold, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:          On behalf of the defendant-appellant, the cause was submitted on the briefs of *Cary Bloodworth*, assistant state public defender, Madison.

Respondent
ATTORNEYS:          On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Sarah L. Burgundy*, assistant attorney general, and *Joshua L. Kaul*, attorney general.

## COURT OF APPEALS
## DECISION
## DATED AND FILED

## July 28, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2021AP1792-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019CF47

**IN COURT OF APPEALS**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

JAMIE LEE WEIGEL,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Lafayette County:   DUANE M. JORGENSON, Judge.   *Reversed and cause remanded with directions*.

Before Kloppenburg, Graham, and Nashold, JJ.

¶1      NASHOLD, J.   Jamie Lee Weigel appeals a judgment of conviction and an order denying her motion for postconviction relief.   Weigel entered into a plea agreement, pursuant to which the State agreed to recommend a twenty-year

bifurcated sentence. Weigel argues that her trial counsel rendered ineffective assistance by not objecting to the State's remark at sentencing indicating the State's approval of a twenty-five-year total sentence. We conclude that the State materially and substantially breached the plea agreement and that counsel was ineffective for not objecting to the breach. Accordingly, we reverse and remand for resentencing before a different judge.

## BACKGROUND

¶2    The underlying facts are not in dispute. The State charged Weigel with four counts stemming from her abuse and neglect of her two young children, A.B. and C.D.[1] The State also brought child abuse and neglect charges against the children's father ("the father"), who was Weigel's partner.

¶3    Weigel entered into a plea deal. As set forth in an e-mail from the prosecutor, the State agreed to "cap [its] recommendation at a 20 year sentence, including initial incarceration and extended supervision." In exchange, Weigel pleaded guilty to two of the four charges: physical abuse of A.B., intentionally causing great bodily harm; and chronic neglect of C.D., causing bodily harm, both as party to a crime. *See* WIS. STAT. §§ 948.03(2)(a), 948.21(2), 948.215(1), (2)(d). The parties agreed that the other two charges—physical abuse of C.D., intentionally causing great bodily harm; and chronic neglect of A.B., causing bodily harm— would be dismissed and read in at sentencing.

---

[1] In keeping with the policy underlying WIS. STAT. RULE 809.86(1) (2019-20), we refer to the victims using initials that do not conform to their actual names. To avoid providing identifying details about the victims, we also refer to their father as "the father." All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4      The same judge that was to sentence Weigel first sentenced the father. The father received a total sentence[2] of twenty-five years, consisting of a twenty-year bifurcated sentence and a five-year term of probation. At the father's sentencing, the circuit court appeared to assign greater culpability to Weigel, remarking that Weigel's conduct was worse than the father's. Thus, both the defense and the State assumed it was unlikely that Weigel would receive a lesser sentence than the father received.

¶5      Prior to Weigel's sentencing, the Department of Corrections (DOC) submitted a presentence investigation report (PSI), and Weigel submitted an alternative PSI. The DOC PSI recommended a twenty-year total sentence, consisting of fourteen years of initial confinement and six years of extended supervision. The alternative PSI recommended a twenty-five-year total sentence, consisting of: (1) ten to twelve years of initial confinement and eight to ten years of extended supervision, combined so as to equal twenty years; and (2) a five-year term of probation. Weigel also submitted a sentencing memorandum based on the alternative PSI, which recommended a twenty-five-year total sentence, consisting of: (1) ten years of initial confinement and ten years of extended supervision; and (2) a five-year term of probation.

¶6      At Weigel's sentencing hearing, the State argued that the "recommendation and analysis" of the DOC PSI was "pretty much spot on," noting

---

[2] The parties dispute whether a period of probation can be considered a "sentence," and we address that argument in our discussion. Strictly for ease of reading, however, this opinion uses the term "total sentence" to connote the total amount of time (initial confinement, extended supervision, and probation) in which a defendant is under the control or supervision of the Department of Corrections.

that "[t]hat recommendation was for, in total[,] 14 years of incarceration and 6 years of extended supervision." However, the State further argued,

> We then had an alternative [PSI] that is similar. The only caveat to that, Your Honor, is the initial incarceration period request is between 10 to 12 years.
>
> [Defense counsel] submitted a sentencing memorandum ahead of time, which I have reviewed. [That] request is for a 25 year sentence. I'm assuming that part of that [comes from] the fact that [the father] received a 25 year sentence. So, there's not a lot that we're arguing about today. *Both parties agree that 25 years in total is appropriate.* The only issue then is the amount of initial incarceration.

(Emphasis added.) Weigel did not object to the above-emphasized statement. The State then recommended a sixteen-year period of initial incarceration.

¶7    The court imposed a total sentence of thirty years: twenty years of initial confinement and ten years of extended supervision.[3] Weigel brought a motion for postconviction relief, arguing that the State materially and substantially breached the plea agreement by stating that a twenty-five-year total sentence was "appropriate" and that trial counsel was ineffective for failing to object to that statement. *See* ***State v. Howard***, 2001 WI App 137, ¶¶13-15, 21, 246 Wis. 2d 475, 630 N.W.2d 244. Following a ***Machner***[4] hearing, the court denied the motion. We will set forth additional facts where relevant.

---

[3] On the count of physical abuse of A.B., intentionally causing great bodily harm, the court imposed a sentence of fifteen years of initial confinement and five years of extended supervision. On the count of chronic neglect of C.D., causing bodily harm, the court imposed a consecutive sentence of five years of initial confinement and five years of extended supervision.

[4] *See* ***State v. Machner***, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

**DISCUSSION**

*I. Principles of Law and Standards of Review*

¶8 "A criminal defendant has a constitutional right to the enforcement of a negotiated plea agreement," meaning that, once the defendant has pled guilty, "due process requires that the defendant's expectations be fulfilled." *Id.*, ¶13. The State breaches a plea agreement where it either does not abide by the agreement's explicit terms or where it indirectly undermines the agreement by "render[ing] less than a neutral recitation" of those terms. *State v. Poole*, 131 Wis. 2d 359, 364, 394 N.W.2d 909 (Ct. App. 1986); *see State v. Williams*, 2002 WI 1, ¶¶38-39, 42, 249 Wis. 2d 492, 637 N.W.2d 733. However, "[n]ot all breaches of a plea agreement require a remedy." *Howard*, 246 Wis. 2d 475, ¶15. Rather, the State's breach must be "substantial and material" (as opposed to merely "technical"). *Id.* Put another way, the defendant is entitled to a remedy where he or she was "deprive[d] … of a material and substantial benefit for which he or she bargained." *Id.*

¶9 When the defendant does not contemporaneously object to the State's conduct at sentencing, the defendant forfeits the right to directly raise that issue on appeal. *Id.*, ¶21. Accordingly, the defendant "is entitled to a remedy for the State's substantial and material breach only if he [or she] was provided ineffective assistance of counsel." *Id.*

¶10 A claim of ineffective assistance of counsel requires the defendant to show that counsel performed deficiently and that counsel's deficient performance prejudiced the defendant. *Id.*, ¶22. Deficient performance means that counsel's acts or omissions fell outside "the 'wide range of professionally competent assistance.'" *State v. Pico*, 2018 WI 66, ¶19, 382 Wis. 2d 273, 914 N.W.2d 95 (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)). Typically,

prejudice to the defendant means that there is "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Pico*, 382 Wis. 2d 273, ¶20 (quoting *Strickland*, 466 U.S. at 694). However, when trial counsel renders "'deficient performance in failing to object to a substantial and material breach of the plea agreement, the defense is automatically prejudiced.'" *Howard*, 246 Wis. 2d 475, ¶26 (quoting *State v. Smith*, 207 Wis. 2d 258, 281-82, 558 N.W.2d 379 (1997)).

¶11    "When the facts are undisputed, the question of whether the [State's] conduct breached the terms of the plea agreement is a question of law that we review de novo." *Smith*, 207 Wis. 2d at 266.  Likewise, whether the breach was "material and substantial" is a question of law.  *Williams*, 249 Wis. 2d 492, ¶2.

¶12    Whether trial counsel rendered ineffective assistance in failing to object to the State's conduct is a mixed question of fact and law.  *Smith*, 207 Wis. 2d at 266.  We uphold the circuit court's factual findings unless clearly erroneous, but we determine de novo whether the standard for ineffective assistance of counsel is thereby met.  *Id.* at 266-67.

*II. Application to Weigel's Appeal*

¶13    For the reasons we now explain, we conclude that the State breached its plea agreement with Weigel, that the breach was material and substantial, and that trial counsel rendered deficient performance by not objecting.  Accordingly, we reverse and remand for resentencing before a different judge.

A. The State breached the plea agreement when it stated that a total sentence above the maximum it agreed to recommend was "appropriate."

¶14 It is undisputed that the State and Weigel entered into a plea agreement under which Weigel agreed to plead guilty to physical abuse of A.B. and chronic neglect of C.D. In exchange, the State agreed to dismiss and read in the other two counts in the Information and, as stated in an e-mail from the prosecutor, "cap [its] recommendation at a 20 year sentence, including initial incarceration and extended supervision."[5]

¶15 At sentencing, some of the State's remarks were consistent with the plea agreement: the State indicated approval of the DOC recommendation of fourteen years of incarceration and six years of extended supervision, and it recommended sixteen years of initial confinement. The State, however, also referred to the defense's "request … for a 25 year sentence" and remarked, "Both parties agree that 25 years in total is appropriate." Weigel argues that the State's latter remark that "25 years in total is appropriate" constitutes a breach of the plea agreement.

¶16 We agree. At worst, the State's latter remark directly contradicted the plea agreement by explicitly recommending a sentence of twenty-five years. At best, the State's remark constituted an indirect "'[e]nd run[]' around [the] plea agreement"—i.e., a "covert[]" indication "that a more severe sentence [wa]s warranted." *See **Williams**, 249 Wis. 2d 492, ¶42. Such indirect undercutting of the

---

[5] The circuit court determined that there was no plea agreement, and it denied Weigel's ineffectiveness claim on that basis. Weigel argues that the circuit court clearly erred in concluding that there was no plea agreement. The State, to its credit, concedes what the record reflects: that a plea agreement existed, with the terms as set forth above. Accordingly, we conclude that there was a plea agreement, and we do not further address Weigel's arguments on this issue.

plea agreement is likewise prohibited. *See id.*; *see also, e.g.*, *id.*, ¶¶47-48 (the State breached the plea agreement where it recited information in the PSI to imply that it agreed with the PSI's harsher sentence and that it would not have entered into the plea agreement had it known that information); *Poole*, 131 Wis. 2d at 360, 364 (the State breached the plea agreement where it stated that the recommendation was "before we knew" that the defendant's probation had been revoked in a separate case).

¶17 In seeking to avoid this conclusion, the State argues that it in fact adhered to the plea agreement because it never "promise[d] to abstain from recommending a probationary period." Rather, the State argues, "its promise was limited to capping its recommended [bifurcated] sentence." The State cites to case law in support of its assertion that "it is well-settled that probation is 'not considered a sentence.'" *See State v. Fearing*, 2000 WI App 229, ¶6, 239 Wis. 2d 105, 619 N.W.2d 115, *superseded by statute on other grounds, as stated in State ex rel. Baade v. Hayes*, 2015 WI App 71, ¶8 n.3, 365 Wis. 2d 174, 870 N.W.2d 478. Thus, in the State's view, nothing in the plea agreement prohibited it from recommending a period of probation in addition to a twenty-year bifurcated sentence.

¶18 As a threshold matter, we note that the State did not, in fact, explicitly recommend a bifurcated sentence and a term of probation. Instead, the State approved of the terms of the DOC PSI's recommendation (fourteen years of initial confinement and six years of extended supervision), set forth its own recommendation of sixteen years of initial confinement, and agreed "that 25 years in total is appropriate." In any event, the State's argument fares no better even if we assume that the State's remarks, in full, were meant to convey its recommendation of a twenty-year bifurcated sentence followed by a five-year term of probation.

¶19    Rather, we agree with Weigel that "the [S]tate's attempt to inject a technical definition of the word 'sentence' into the context of plea negotiations is misguided." It is true that, in other contexts, we have observed that "generally probation is not considered a sentence." *See Fearing*, 239 Wis. 2d 105, ¶6. This statement, however, was in reference to the meaning of the term "sentence" as used in particular statutes. *Id.* Thus, we observed, "While 'sentence' may also be used in a more general sense, to include probation, it is a legal term and should be given its legal meaning *when used in the statutes and the law unless there are strong indications the term was used in a general sense.*" *Id.* (emphasis added; internal quotation marks and quoted source omitted).

¶20    This is just such a case where the term "sentence" should be given its general or colloquial meaning and should not be interpreted to refer only to the bifurcated sentence. The question before us does not involve statutory interpretation; instead, in analyzing a plea agreement, we are guided by principles of contract law. *See State v. Wills*, 187 Wis. 2d 529, 537-38, 523 N.W.2d 569 (Ct. App. 1994); *State v. Bembenek*, 2006 WI App 198, ¶11, 296 Wis. 2d 422, 724 N.W.2d 685. "A contract is based on a mutual meeting of the minds as to terms, manifested by mutual assent." *Bembenek*, 296 Wis. 2d 422, ¶11 (internal quotation marks and quoted source omitted). Here, the record shows that both Weigel and the State construed the term "sentence" broadly, to include any term of probation that might be imposed by the court. At the *Machner* hearing, Weigel testified that she believed that "everything would be capped at 20 years." And at sentencing, the State itself used the term "sentence" to refer to the combined bifurcated sentence and period of probation recommended by Weigel, describing that "total" "sentence" as "25 years."

¶21     Moreover, although the email from the prosecutor did not explicitly state that the State would *not* recommend an additional term of probation, we agree with Weigel that it would "defeat[] the purpose and spirit of the agreement" to permit the construction of the agreement now advanced by the State.  As Weigel correctly notes, probation may have "major consequences," including the possibility of revocation and additional prison time, meaning that Weigel's "exposure would be much more significant than the 20-year cap [the] agreement contemplated." "Contract law reads into commercial contracts a duty to deal in good faith," and this principle applies equally to the plea agreement context.  ***Wills***, 187 Wis. 2d at 537. We conclude that it would be a violation of this contractual duty for the State, having agreed to "cap" its recommendation at a twenty-year bifurcated sentence, to then recommend an additional term of probation.

¶22     We therefore conclude that the State's remarks at sentencing— whether indicating its "agreement" with *either* a twenty-five-year total sentence *or* a twenty-year bifurcated sentence followed by a five-year term of probation— constituted a breach of the plea agreement.  Accordingly, we turn to whether this breach was "material and substantial."

   B. The State's breach of the plea agreement was "material and substantial."

¶23     As stated, a defendant is only entitled to a remedy where the State's breach of the plea agreement was "material and substantial," meaning that the breach "deprive[d] the defendant of a material and substantial benefit for which he or she bargained."  ***Smith***, 207 Wis. 2d at 272.  Weigel argues that the twenty-year

sentencing cap was "a material and substantial term of the agreement" and that the "breach was also substantial, deviating from the agreement by 5 years."

¶24    The State concedes that "[n]ormally, if a prosecutor entered a plea agreement promising to cap the[] sentencing recommendation at 20 years, and ultimately asked for 25, even implicitly, that would be a material and substantial breach."  The State argues, however, that these circumstances are not typical. Specifically, as noted, the circuit court judge who sentenced Weigel first sentenced the father.  In that case, the court imposed a total sentence of twenty-five years:  a twenty-year bifurcated sentence, consisting of fifteen years of initial confinement and five years of extended supervision, followed by a five-year term of probation. The court remarked at the time that the father was less culpable than Weigel. Weigel's trial counsel testified at the *Machner* hearing that his "impression" was that the father's sentence "set the bar for the low mark … and that it would [be] unlikely that [Weigel] would get less than that."  Thus, counsel testified, his "ultimate decision was to match" the father's sentence, even though that meant that he was requesting a greater total sentence than that recommended by the State. Accordingly, Weigel's counsel recommended a twenty-five-year total sentence, consisting of a bifurcated sentence of ten years of initial confinement and ten years of extended supervision, followed by a five-year term of probation.

¶25    Given these circumstances, the State argues that Weigel's counsel "implicitly modified [the] terms of the agreement" by filing presentencing reports (the alternative PSI and the sentencing memorandum) recommending a twenty-five-year total sentence.  It follows, the State argues, that any breach of the plea agreement could not have deprived Weigel of a bargained-for benefit. Alternatively, the State implies that Weigel was not deprived of the benefit of the

bargain because "no one was expecting [her] to get a lower total [sentence] than what [the father] had received."

¶26 We are unpersuaded. Nothing in the plea agreement limited Weigel's sentencing request; rather, Weigel's only obligation was to plead guilty to two specified charges. Weigel held up her end of the bargain and remained free to argue for any sentence she chose. Therefore, Weigel's seeking a twenty-five-year sentence did not and could not "implicitly modif[y]" the terms of an agreement that she had already fulfilled.

¶27 Moreover, we agree with Weigel that her strategy in arguing for a twenty-five-year total sentence does not diminish the significance of the State's breach. Weigel apparently assumed that she would be most likely to receive a relatively shorter period of initial incarceration if she herself recommended a total sentence that "matched" the father's. But pursuant to the plea agreement she had already entered, Weigel would necessarily make that request against the backdrop of the State's recommending a twenty-year total sentence. The State indisputably denied Weigel the benefit of that agreement when it instead stated that a twenty-five-year total sentence was "appropriate."

¶28 Furthermore, we agree with Weigel that it is "problematic" for the State to argue that the breach was not material and substantial *because* both parties anticipated that she would receive a higher sentence than the father. Weigel expected and had a right to an individualized and independent sentencing hearing, and we reject the State's implication that her sentence was in any way predetermined. *See State v. Gallion*, 2004 WI 42, ¶48, 270 Wis. 2d 535, 678 N.W.2d 197 ("Individualized sentencing … has long been a cornerstone to Wisconsin's criminal justice jurisprudence."). We also agree with Weigel that—

given the circuit court's apparent view that she was more culpable than the father— it was particularly important that the State adhere to the twenty-year cap that it had agreed to, so as to counteract the effect of the father's sentence.

¶29     In sum, we conclude that the State materially and substantially breached its plea agreement with Weigel.

C.  Weigel's counsel was ineffective for not objecting to the State's material and substantial breach.

¶30     As stated, in this context, the "ineffective assistance of counsel" inquiry concerns only the "deficiency" prong of *Strickland*.  That is, "[w]here the attorney is guilty of deficient performance in failing to object to a substantial and material breach of the plea agreement, the defense is automatically prejudiced." *State v. Sprang*, 2004 WI App 121, ¶25, 274 Wis. 2d 784, 683 N.W.2d 522 (alteration in original; internal quotation marks and quoted source omitted).

¶31     Weigel's counsel did not specifically discuss any strategic basis for his failure to challenge the State's sentencing remarks.  Rather, when asked to explain why he did not object, counsel testified, "I don't know.  I may have just simply missed it."  Counsel further explained:

> I can't really answer why I didn't object.  What I can say is that in that moment I was more concerned about persuasion of the court than I was about objecting to the breach of [the] plea agreement.  But in all honesty, I can't even recall in that moment whether I was realizing [that] there was a breach of the plea agreement.

¶32     The State argues that trial counsel's performance was not deficient because an objection would have been "incongruous" with the defense strategy of persuading the circuit court to sentence Weigel on the same terms as the father.  As a threshold matter, we are not persuaded that it would have necessarily undermined

counsel's sentencing strategy to point out the fact of the State's breach. In any event, we agree with Weigel that counsel's failure to object would constitute deficient performance *even if* that failure were based on strategic considerations. In *Sprang*, 274 Wis. 2d 784, ¶¶11, 24, 26-27, we concluded that the State breached a plea agreement, and we then evaluated defense counsel's explanation for not objecting. We "agree[d] … that defense counsel had valid strategic reasons for choosing not to object to the prosecutor's remarks." *Id.*, ¶27. We also concluded, however, that counsel's deficient performance stemmed from his failure to "consult with [the defendant] or seek [the defendant]'s opinion in the matter." *Id.* Thus, counsel's actions were "tantamount to entering a renegotiated plea agreement without [the defendant]'s knowledge or consent," *id.*, ¶29, and were impermissible, *id.*, ¶¶28-29.

¶33 Weigel argues (and the State does not dispute) that trial counsel never sought Weigel's permission, and Weigel never agreed, to waive an objection to the State's breach.[6] The State, for its part, does not address this argument or *Sprang* more generally; thus, the State appears to concede that *Sprang* controls. We therefore conclude that counsel was deficient, regardless of whether strategic considerations weighed in favor of not objecting to the State's breach.

## III. *We Remand for Resentencing Before a Different Judge*

¶34 Finally, we must determine the appropriate remedy for Weigel's ineffectiveness claim. Weigel seeks resentencing before a different judge, whereas

---

[6] Both trial counsel and Weigel stated that they could not recall Weigel's agreeing to waive a defense objection to the State's argument that a twenty-five-year total sentence was "appropriate." But given counsel's testimony that he did not necessarily understand that a breach had occurred, it stands to reason that counsel did not consult with Weigel about the decision to object.

the State, somewhat vaguely, argues that "it may be that plea withdrawal would be the appropriate remedy."

¶35 This court has recognized that "[t]he choice of remedy is not up to the defendant; it rests with the court." *Howard*, 246 Wis. 2d 475, ¶37. We further noted the preference under binding and persuasive case law for the "less extreme remedy" of specific performance—i.e., resentencing before a different judge, as opposed to vacation of the plea. *Id.*; *see also id.*, ¶¶32-37. We observed, "In the event it is the appellate court that first concludes [that] a remedy is necessary, the appellate court can choose to simply order resentencing by a different judge as opposed to remanding to the sentencing judge for a full consideration of possible remedies." *Id.*, ¶37 n.9.

¶36 The State does not engage with Weigel's request for the "less extreme remedy" of resentencing before a different judge. *See id.*, ¶37. That is, the State does not set forth its argument in any meaningful sense; nor does it cite any case law for its conclusion that plea withdrawal "may be … the appropriate remedy." Accordingly, we do not address the State's position further, and we instead conclude that resentencing before a different judge is the appropriate remedy. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) ("[w]e cannot serve as both advocate and judge"; thus, we may decline to review issues inadequately briefed or unsupported by reference to legal authority).

## CONCLUSION

¶37 Weigel's counsel provided ineffective assistance in not objecting to the State's material and substantial breach of the plea agreement. The appropriate remedy is resentencing before a different judge. Accordingly, we reverse the

judgment of conviction and the postconviction order denying Weigel's ineffectiveness claim, and we remand for resentencing before a different judge.

*By the Court.*—Judgment and order reversed and cause remanded with directions.