COURT OF APPEALS
DECISION
DATED AND FILED

May 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP876-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF388

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

  V.

DONAVEN C. SPRAGUE,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 HRUZ, J. Donaven Sprague appeals an order denying his postconviction motion to vacate his judgment of conviction so that he may be resentenced before a different judge. Sprague argues that his trial counsel was

constitutionally ineffective by incorrectly advising Sprague that the State had adequately cured its material and substantial breach of the parties' plea agreement, combined with failing to advise Sprague that the option of resentencing before a different judge was available to him upon the State's breach.

¶2 We conclude that the State failed to cure its material and substantial breach of the parties' plea agreement. Therefore, we agree with Sprague that his trial counsel was constitutionally ineffective, given counsel's erroneous belief that the State had cured the breach, counsel's resulting incorrect advice, and counsel's failure to advise Sprague of the appropriate remedies available to him, including resentencing before a different judge. Accordingly, we reverse the judgment and order, and we remand for a new sentencing hearing before a different judge.

## BACKGROUND

¶3 The State charged Sprague with one count of repeated sexual assault of a child. According to the criminal complaint, Sprague repeatedly sexually assaulted the victim when she was between the ages of 9 and 12 years old. Pursuant to a plea agreement, Sprague agreed to plead guilty to the single charge. In exchange, the State agreed to cap its sentencing recommendation at 10-years' imprisonment, consisting of 5 years of initial confinement followed by 5 years of extended supervision. Sprague's trial counsel remained free to argue as to a sentencing recommendation.

¶4 Following a plea colloquy, the circuit court accepted Sprague's guilty plea, found him guilty of the charge, and ordered a presentence investigation report ("PSI"). The PSI recommended a prison sentence consisting of 13 to 16 years of initial confinement followed by 3 to 4 years of extended supervision.

2

¶5 At sentencing, the State began its argument by noting the seriousness of Sprague's offense, focusing on Sprague's position of trust when he committed the offense and the "devastat[ing]" impact of the offense on his family. As to Sprague's character, the State noted his decision to plead guilty and his remorse. Addressing the protection of the public, the State then focused on Sprague's inability to provide an answer as to why he had continued to sexually assault the victim. The State also noted its concern with Sprague's prior conviction for exposing genitals to a child and a deferred charge for possession of child pornography. Given Sprague's statements in the PSI concerning his sexual addiction, the State argued that Sprague's risk to the public was "very significant."

¶6 Adding to its concerns regarding the public's protection, the State referred to the PSI author's statement that Sprague's "sexual proclivities don't have any bounds." Given these proclivities, the State said that it "was a little surprised" that the COMPAS[1] evaluation within the PSI assessed Sprague as having a low risk of reoffending. Placing emphasis on the seriousness of the offense and protection of the public factors, the State concluded its sentencing argument by noting the PSI's recommended sentence and then stating that "given the aggravated nature of this case and the position of trust that Mr. Sprague was in, *he falls on the upper end of that, of the 16 years confinement* with four years extended supervision, and *that's the recommendation that I think is appropriate for him under the circumstances*." (Emphasis added.)

---

[1] COMPAS stands for Correctional Offender Management Profiling for Alternative Sanctions.

¶7      Sprague's trial counsel did not immediately object, but counsel began his sentencing argument by reminding the circuit court that the State had agreed to cap its recommendation at 5 years of initial confinement followed by 5 years of extended supervision.   Before counsel continued, the court asked whether the State had violated the plea agreement by asking for a sentence that was more than what the plea agreement allowed, to which counsel responded that the State had.  The court and the parties then had the following exchange:

> THE COURT: [State], do we have an issue there?
>
> [STATE]: I'm just trying to go back and look through here.
>
> THE COURT: I think we should.
>
> [STATE]: Yeah.  That was my letter on December 13th, 2018.  Yeah, that was.  That is correct.  I would stand with the recommendation of ten years, five years in, five years out.
>
> THE COURT: [Counsel], does that cure the defect, in your opinion, or not, or where does that leave us going forward today if we can?
>
> [COUNSEL]: Just one more statement about that.  He found his letter, that he agreed that that is a cap and I was free to argue for more [sic], but understanding that that's what their position was, and that's the offer that my client accepted.
>
> ….
>
> THE COURT: So his cap was ten, five/five split, and you're free to argue.
>
> [COUNSEL]: Correct.
>
> THE COURT: Is that a fair summary of your plea agreement parameters, [State]?
>
> [STATE]: Yes, it is.  That was in my letter.  My apologies.

The parties did not further discuss the State's earlier comments and sentence recommendation.

¶8 The circuit court then asked defense counsel whether he wanted to confer with Sprague to see if he wanted to continue with the sentencing hearing. Before going into a recess, the court noted what it wanted counsel to discuss with Sprague, including whether Sprague wanted to withdraw his plea "or some other option in between," whether the State's comments "were so out of bounds" that Sprague could not get a fair sentencing, and whether Sprague felt comfortable continuing with the sentencing in light of the State's correction of its error.[2]

¶9 Following a 20-minute recess, Sprague and his counsel informed the circuit court that Sprague had chosen to proceed with sentencing. Counsel then continued with his sentencing argument, recommending a 10-year prison sentence consisting of 3 years of initial confinement followed by 7 years of extended supervision. The court imposed a 15-year prison sentence, consisting of 10 years of initial confinement followed by 5 years of extended supervision.

¶10 Sprague then filed a postconviction motion seeking resentencing before a different judge on the ground that he received ineffective assistance of counsel at his sentencing.[3] Relevant to this appeal, Sprague alleged that his

---

[2] To be clear, in the context of what occurred here, the circuit court appropriately handled this situation. The court correctly advised defense counsel on what to discuss with Sprague and held a recess for counsel to discuss the options with his client.

[3] Prior to filing his postconviction motion, Sprague's appellate counsel had filed a no-merit report, which was withdrawn by subsequent appellate counsel.

In his postconviction motion, Sprague alternatively sought resentencing before the same judge on the ground that he was deprived of his right to review his PSI before sentencing. Sprague does not raise this argument on appeal; therefore, we do not address it further.

counsel erred by advising Sprague, upon the State's breach of the plea agreement, that "getting a different judge wouldn't matter, even though a new judge would hear the promised recommendation from the start." The circuit court held a *Machner*[4] hearing, at which both defense counsel and Sprague testified about their recollections of their discussion during the 20-minute recess at the sentencing hearing.

¶11 Following supplemental briefing, the circuit court issued a written decision denying Sprague's postconviction motion. The court found that counsel's testimony was more credible than Sprague's, and it concluded that Sprague had failed to show that he received ineffective assistance of counsel. Regarding counsel's advice on the State's breach, the court found that counsel "did not push [Sprague] one way or another, but simply recommended that he thought the sentencing could be fair because [the State] admitted and apologized to the [c]ourt for the mistake in [its] initial sentence recommendation, and it had been corrected before defense counsel's sentencing" argument and before the court imposed a sentence. Thus, the court concluded that the State's breach was not material and substantial.

¶12 The circuit court further concluded that counsel's manner of handling the State's breach was not ineffective. It stated that "there was nothing so inherently inflammatory or prejudicial about [the State's] comments," other than the length of the recommended sentence, that would have caused a reasonable attorney to seek resentencing before a different judge or plea withdrawal. Sprague now appeals. Additional facts are provided below as necessary.

---

[4] *See* **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

## DISCUSSION

¶13 On appeal, Sprague argues that his trial counsel was ineffective by failing to advise Sprague that the State had inadequately cured its material and substantial breach of the parties' plea agreement and by failing to advise Sprague that he was entitled to resentencing before a different judge. In response, the State concedes that it materially and substantially breached the plea agreement, but it argues that it cured the breach. Because it cured the breach, the State contends that the remedy of resentencing before a different judge was unavailable to Sprague. As a result, the State asserts that Sprague's trial counsel was not ineffective by failing to advise Sprague of an unavailable remedy.

¶14 An ineffective assistance of counsel claim requires a defendant to show both that his or her counsel's performance was deficient and that the deficient performance was prejudicial. *State v. Nietzold*, 2023 WI 22, ¶18, 406 Wis. 2d 349, 986 N.W.2d 795. An ineffective assistance of counsel analysis involves mixed questions of law and fact. *State v. Bowers*, 2005 WI App 72, ¶5, 280 Wis. 2d 534, 696 N.W.2d 255. We uphold the circuit court's factual findings unless they are clearly erroneous, but we independently determine whether trial counsel's conduct was deficient and prejudicial. *See State v. Weigel*, 2022 WI App 48, ¶12, 404 Wis. 2d 488, 979 N.W.2d 646.

¶15 Given that both parties' arguments regarding the effectiveness of Sprague's counsel turn on whether the State cured its breach of the plea agreement, a question of law that we review de novo, *see Nietzold*, 406 Wis. 2d 349, ¶13, we first address whether the State cured its breach. Because we conclude that the State did not cure the breach, we then address whether counsel's

advice to Sprague regarding his available remedies upon the State's breach constituted ineffective assistance of counsel.

## I. The State failed to cure its breach of the plea agreement.

¶16    A defendant has "a constitutional right to the enforcement of a negotiated plea agreement." *State v. Williams*, 2002 WI 1, ¶37, 249 Wis. 2d 492, 637 N.W.2d 733.  The State breaches a plea agreement when "it does not abide by the agreement's explicit terms" or when "it indirectly undermines the agreement by 'render[ing] less than a neutral recitation' of those terms." *Weigel*, 404 Wis. 2d 488, ¶8 (alteration in original; citation omitted).  An actionable breach, however, must be material and substantial, rather than technical.  *Williams*, 249 Wis. 2d 492, ¶38.  In other words, the State's breach must deprive the defendant of a material and substantial benefit for which he or she bargained.  *Weigel*, 404 Wis. 2d 488, ¶8.  When the State materially and substantially breaches the plea agreement, the defendant is entitled either to plea withdrawal or to resentencing before a different judge. *See id.*, ¶35.

¶17    Although some material and substantial breaches cannot be cured, at least some breaches can be cured upon a timely objection, such as when the State "simply forgot its commitment and is willing to adhere to the agreement." *Nietzold*, 406 Wis. 2d 349, ¶9 (citation omitted).  Thus, "a material breach of the plea agreement may be cured if the prosecutor unequivocally retracts the error." *Id.*, ¶11.  However, "even an oblique variance will entitle the defendant to a remedy if it 'taints' the sentencing hearing by implying to the court that the defendant deserves more punishment than was bargained for."  *Bowers*, 280 Wis. 2d 534, ¶9.  When determining whether the State cured its breach, we focus on the State's conduct, not the court's.  *See Nietzold*, 406 Wis. 2d 349, ¶15.

¶18 Sprague argues that the State's breach of the plea agreement was "too egregious" to be cured, given the State's "lengthy, detailed explanation of the aggravating factors it had identified before urging the circuit court to impose more" confinement time than permitted by the plea agreement. Indeed, the confinement time was much more than what the State had agreed to recommend—16 years versus 5 years. Citing *Williams*, Sprague further contends that the State's "cursory retraction" of its mistaken recommendation was insufficient to cure the breach and "did nothing to alter the overall impression any reasonable listener would have: that the State believed 16 years was appropriate but was amending its recommendation to 5 because it was bound to do so."

¶19 In response, the State argues that its recognition of the error, belated as it was, and its modification of its recommendation were sufficient to cure the breach of the plea agreement, citing *Nietzold* in support. In addition, the State contends that it did not "express any reservations about the plea agreement or the recommendation" and that its sentencing argument simply disclosed "relevant sentencing information without suggesting that the State believed a 10-year sentence was insufficient."

¶20 We agree with Sprague and conclude that the State did not adequately cure its breach of the plea agreement. The State's correction of its initial confinement recommendation from 16 years to 5 years and its subsequent apology as to the mistake were insufficient to remedy the "taint" on the sentencing hearing created by the State's sentencing argument implying that Sprague deserved 16 years of initial confinement rather than 5 years—a raw reduction of 11 years, equating to a near 70 percent reduction. This change was significant, and it required explanation and argument by the State to clarify the basis for the difference between the two recommendations.

9

¶21     In its sentencing argument, the State heavily emphasized the seriousness of Sprague's offense and his "sexual proclivities" as a risk to the public, concluding that both factors required the "high end" of the PSI's recommended 13 to 16-year range of initial confinement.  The State corrected its recommendation only when Sprague's counsel began his sentencing argument by reminding the circuit court—and the State—of the agreed-upon recommendation. Although the State's retraction was then immediate, the State failed to explain why a 5-year recommendation was suddenly appropriate given the factors it had outlined in its sentencing argument, especially given that it had tied those factors to its much longer 16-year recommendation.

¶22     Contrary to the State's argument, these circumstances are materially different from those in *Nietzold*, where the State could and did tie its sentencing argument to its corrected recommendation.  In *Nietzold*, the State breached a plea agreement in which it could argue for a prison sentence, but it could not recommend a specific term of imprisonment.  *Nietzold*, 406 Wis. 2d 349, ¶2.  In its sentencing argument, the State pondered what the "magic number" was for the defendant's prison sentence, noting both the PSI's recommendation and the victim's recommendation.  *Id.*, ¶3 & n.2.  The State then repeated that it did not know what the "right" number was, but it noted that the PSI's recommendation was "reasonable" and that similar sentences fell within the PSI's recommendation. *Id.*  Noting the "heinous nature" of the defendant's crimes, the State concluded its remarks by asking the circuit court to impose a specific term of imprisonment— namely, a 27-year sentence, composed of 12 years of initial confinement (as recommended in the PSI) followed by 15 years of extended supervision.  *Id.*, ¶3.

¶23     After defense counsel pointed out that the State had breached the plea agreement, the State immediately acknowledged its mistake.  *Id.*, ¶4.  The

State then modified its recommendation, stating that it was not making the recommendation in the PSI, but "[j]ust a prison sentence." *Id.* When the circuit court inadvertently referred to the PSI's recommendation as the State's recommendation, the State interrupted to remind the court that it had not, in fact, made that recommendation. *Id.*, ¶5. Our supreme court concluded that, based on the available record, the State's "immediate and unequivocal retraction of [its] error" and its "subsequent actions affirming that retraction" had sufficiently cured the breach. *Id.*, ¶14. The court further concluded that the State's sentencing argument "never 'raised doubts regarding the wisdom of the terms of the plea agreement.'" *See id.*, ¶16 (citation omitted).

¶24 In contrast, here, the State did nothing to explain the disparity between its initial confinement recommendations, which strongly implied that the State believed 16 years remained an appropriate recommendation but that it would "stand with"—i.e., that it was bound to—its recommendation of 5 years. Such an explanation was unnecessary for the State to adequately cure its breach in *Nietzold* because the State distanced itself from the PSI's and the victim's recommendations by repeatedly stating that it did not know what the "magic number" was for the defendant's sentence, but that there should be a prison sentence. Thus, despite its mistaken recommendation for a specific number of years, the State's argument could still be tied to a request for any number of years. In this case, however, the State needed to do more to distance itself from the PSI's recommendation, for which it had strongly advocated, and to tie the factors on which it relied in its sentencing argument to the agreed-upon, much shorter recommendation of 5 years' initial confinement. Because the State failed to do so, the State's mere recitation of the plea agreement upon counsel's reminder was

more like the State's recitation in *Williams*, which our supreme court described as "too little, too late." *See Williams*, 249 Wis. 2d 492, ¶52.

¶25 In *Williams*, the State agreed to recommend a 3-year probation term with 60 days in the county jail. *Id.*, ¶24. In its sentencing argument, however, the State alluded to the PSI—which had recommended a medium term of imprisonment—and to the State's discussions with the defendant's ex-wife, adopting much of what both had said about the defendant as the State's own opinion. *Id.*, ¶26. In response to the defendant's objection that the State was undercutting its sentencing recommendation and covertly changing it, the State argued that it was merely relaying information from the PSI author because the author was not present at the sentencing. *Id.*, ¶¶27, 29. The State then concluded its sentencing argument by making the agreed-upon recommendation. *Id.*, ¶29. The circuit court ultimately imposed an 18-month prison sentence. *Id.*, ¶25.

¶26 Our supreme court concluded that the State materially and substantially breached the plea agreement because "it undercut the essence of the plea agreement" by covertly implying that the additional information from the PSI and the defendant's ex-wife "raised doubts regarding the wisdom of the terms of the plea agreement." *Id.*, ¶¶46, 50. The court explained that the State's sentencing argument implied it would not have entered into a plea agreement if it had known more about the defendant, and the State's adoption of the PSI's information as its own opinion gave the impression that the State was arguing against the negotiated terms of the plea agreement. *Id.*, ¶48. For these reasons, the court determined that simply affirming the terms of the plea agreement "was not adequate to overcome the [State's] covert message to the circuit court that a more severe sentence was warranted than that which had been recommended." *Id.*, ¶51.

¶27    Similarly, in this case, the State's affirmation that it would "stand with the recommendation of ten years, five years in, five years out" and its apology for the error made in its initial recommendation were not adequate to overcome the message it had conveyed in its sentencing argument. That message being that the upper end of the PSI's recommendation—sixteen years of initial confinement—was appropriate, given the factors the State had just outlined in its sentencing argument. While the State need not "correct a misstated sentence recommendation forcefully or enthusiastically," *see Bowers*, 280 Wis. 2d 534, ¶12, the State simply standing by its corrected recommendation and apologizing, without more, could not erase the "taint" on the sentencing hearing created by its breach. The eleven-year gap between the mistaken and corrected recommendations was too large to be cured by the State's minimal response. *Cf. Bowers*, 280 Wis. 2d 534, ¶¶3, 12 (concluding that the State's prompt acknowledgement and correction of its error in recommending two and one-half years of initial confinement followed by two and one-half years of extended supervision, instead of two years of initial confinement followed by three years of extended supervision, was sufficient to cure the breach "without impairing the integrity of the sentencing process").

¶28    As a final matter, the State is correct that it cannot agree to keep relevant information from the sentencing court and that "pertinent factors relating to the defendant's character and behavioral pattern cannot be immunized by a plea agreement." *See Williams*, 249 Wis. 2d 492, ¶43. The State may convey relevant "information to the sentencing court that is both favorable and unfavorable" to the defendant, as long as the State "abides by the plea agreement." *Id.*, ¶44. Here, the State provided relevant information, and there was nothing wrong with it doing so. The problem, however, is that it provided that information in support of a much

longer sentence recommendation than that to which it agreed. By not adding more explanation to its brief correction of the mistaken recommendation, the State continued to imply that Sprague deserved more punishment than what he bargained for with the State. *See Bowers*, 280 Wis. 2d 534, ¶9.

¶29 In sum, we conclude that the State failed to cure its material and substantial breach of the plea agreement. Thus, we turn to Sprague's ineffective assistance of counsel claim.

## II. Sprague's counsel provided ineffective assistance.

¶30 Sprague argues that his counsel performed deficiently in response to the State's breach of the plea agreement by "affirmatively advising Mr. Sprague that the State's correction of its recommendation was adequate," combined with counsel failing to advise Sprague that resentencing before a different judge was an available remedy. Based on these errors, Sprague contends that he was prejudiced because he chose to "proceed with a sentencing hearing at which he didn't get the benefit of his bargain."

¶31 Counsel's performance is deficient if his or her acts or omissions "fell below an objective standard of reasonableness considering all the circumstances." *Nietzold*, 406 Wis. 2d 349, ¶19 (citation omitted). When evaluating counsel's conduct, we presume that "counsel's conduct falls within the wide range of reasonable professional assistance," and we make every effort to assess counsel's challenged conduct from counsel's perspective at the time. *Strickland v. Washington*, 466 U.S. 668, 688-89 (1984).

¶32 Counsel's deficient performance is prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

14

the proceeding would have been different." *Id.* at 694. A reasonable probability means "a probability sufficient to undermine confidence in the outcome." *Id.* The defendant "need not prove the outcome would 'more likely than not' be different in order to establish prejudice." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89. "Our concern is whether [counsel's] error rendered the [proceedings] unfair and unreliable." *Id.*, ¶33.

¶33 We agree with Sprague that his trial counsel performed deficiently by providing objectively unreasonable advice during the 20-minute recess at the sentencing hearing. As noted above, when the State materially and substantially breaches a plea agreement and does not adequately cure the breach, a defendant is entitled to either plea withdrawal or resentencing before a different judge. *See Weigel*, 404 Wis. 2d 488, ¶35. Our review of counsel's *Machner* hearing testimony does not reflect that counsel ever informed Sprague that he was entitled to resentencing before a different judge.[5]

¶34 At the *Machner* hearing, Sprague's counsel testified about the State's breach and his decision to begin his sentencing argument by noting the State's error: "I wasn't worried because … there was a letter that I had in the file and … I didn't think [the State] was going to deny that we had an agreement." Counsel was then asked to testify about the options he discussed with Sprague during the recess "as specifically as you can." Counsel responded:

---

[5] We note that Sprague's postconviction motion included an allegation that his counsel had correctly informed Sprague "that he had the right to a new sentencing hearing before a different judge, given the State's plea breach" but that counsel "insisted that getting a new judge would not make any difference." Consistent with the parties' arguments on appeal, however, our focus remains on counsel's *Machner* hearing testimony, in which he did not say that he advised Sprague he was entitled to resentencing before a different judge.

> I explained to Mr. Sprague, well, yes, we already agreed to the deal. I knew that I could correct that on the record, and that it would be put back in the Judge's hands. I explained to Mr. Sprague that even though, I mean, it was his choice, we could come back at a different day or they could continue—we could continue with the hearing, provided that I was going to steer it back on course with what our agreement was. And Mr. Sprague said to me that he was okay with continuing as long as I was going to get it back to what we had agreed to with the State.

¶35 The law is clear regarding the available remedies upon the State's material and substantial breach of a plea agreement, and counsel's discussion of Sprague's available options did not include resentencing before a different judge. Further compounding counsel's failure to advise Sprague of the available remedies was counsel's belief that reminding the State of the plea agreement—and his unexplained belief that he could "steer" the sentencing "back on course" with the plea agreement—were enough to continue with the sentencing that day. Or, as the circuit court found, counsel believed the sentencing could remain fair because the State had adequately cured its breach. As we concluded above, however, the State's sentencing argument supporting its mistaken recommendation had already tainted the sentencing hearing to the point that the State could not cure its breach by simply correcting its mistake without greater explanation on its part, which it failed to provide. Given the manner in which the State made its sentencing argument, counsel's failure to advise Sprague that he was entitled to resentencing before a different judge, based on counsel's belief that Sprague could still receive a fair sentencing despite the State's uncured breach, was objectively unreasonable.

¶36 Because counsel failed to properly advise Sprague of the available remedies and erroneously advised Sprague to either continue with the sentencing or return to court on a different day but before the same judge, even though the State had failed to cure the breach, counsel's performance during the 20-minute

16

recess was deficient. And because Sprague followed counsel's unreasonable advice and chose to move forward with the sentencing that day and before the same judge, we also agree with Sprague that his counsel's deficient performance was prejudicial.

¶37 At the *Machner* hearing, defense counsel testified that Sprague did not tell him that he wanted to withdraw his plea or that he did not want to move forward with sentencing. Counsel, however, had not advised Sprague of the correct options that were available to him.[6] Instead, counsel advised Sprague that his available options were either to return to court on a different day (but before the same judge) or to continue with the sentencing that day, given that the State had acknowledged its mistake. It is clear that Sprague followed counsel's incomplete advice because he chose to move forward with the sentencing.

¶38 In these circumstances, there is a reasonable probability that but for counsel's failure to advise Sprague that he was entitled to resentencing before a different judge and counsel's erroneous advice regarding Sprague's options upon the State's breach, Sprague would not have continued with the sentencing and would have instead chosen the remedy of resentencing before a different judge. As Sprague points out, counsel's errors not only deprived Sprague of a judge who had not heard the State's tainted sentencing argument, but, more importantly, they deprived Sprague of "a meaningful opportunity to get the benefit of his bargain" by the State making a correct, untainted, agreed-upon sentencing recommendation.

---

[6] Although the circuit court mentioned the plea withdrawal option prior to the 20-minute recess, counsel's *Machner* hearing testimony does not suggest that counsel personally mentioned the plea withdrawal option to Sprague. In any event, neither Sprague nor the State make an appellate argument tied to the option of plea withdrawal.

Thus, the State's failure to cure its breach and counsel's errors rendered the continuation of the sentencing hearing unfair and unreliable.

¶39 The State argues that Sprague was not prejudiced by counsel's failure to advise him that he was entitled to resentencing before a different judge because Sprague "had already considered switching judges and declined. Had he been asked again, he would have provided the same answer." Among counsel's errors alleged by Sprague in his postconviction motion, one related to counsel's advice on judicial substitution at the beginning of Sprague's case. Relying on the circuit court's conclusion that Sprague chose to forgo substitution at the beginning of his case, the State appears to contend that Sprague's decision on that issue means he would not have chosen to seek resentencing before a different judge as a remedy for the State's material and substantial breach of the plea agreement.

¶40 That Sprague chose to forgo substitution at the start of his criminal case is irrelevant to determining whether Sprague would have taken advantage of his entitlement to resentencing before a different judge. Sprague made his decision on judicial substitution long before the State materially and substantially breached the plea agreement and long before the circuit court judge heard the State's tainted sentencing argument. Therefore, Sprague's original decision on judicial substitution has no effect on the prejudice inquiry.

¶41 Here, the State materially and substantially breached the plea agreement, it failed to cure that breach, and counsel provided incorrect and unreasonable advice to Sprague as to whether he should proceed with the sentencing hearing despite the State's uncured breach. Had counsel properly advised Sprague regarding his available options and the State's inadequate cure of its breach, there is a reasonable probability that Sprague would have sought

resentencing before a different judge. Sprague has therefore established that his counsel was constitutionally ineffective, and he is entitled to resentencing before a different judge.

*By the Court.*—Judgment and order reversed and cause remanded with directions.

Not recommended for publication in the official reports.